We'll hear argument next in Osterhaus Pharmacy, Inc. against CVS Health Corporation. Mr. Bland? Good morning. May it please the Court. I'm Paul Bland. I represent Osterhaus Pharmacy and three other small pharmacies. These small pharmacies, two of which were driven under and the other two of which are at the brink of insolvency, have brought claims under the federal antitrust laws and some state law claims. And the appeal raises the question about whether Caremark's delegation clause and its arbitration clause, the broader arbitration clause, are unconscionable. In at least three cases, this Court has said the Court should strike down an entire arbitration clause if it contains multiple terms aimed at making arbitration inferior as a forum to court. You can move cases from one forum to another, but it's not supposed to be designed to be an inferior forum. That's the Ronderos, the Heckman, and the Ferguson cases. And there's a series of provisions in Caremark's delegation clause and its arbitration clause that do this. So in court, the filing fee for a plaintiff would be a few hundred dollars. Under Caremark's clause, the upfront escrow payment to Jim's Pharmacy was over $3 million, to Pucci's Pharmacy was over $5 million to just initiate the arbitration, and that would also include initiating arbitration to delegate to challenge provisions of the arbitration provision. It's clearly dramatically worse in court. Under the federal antitrust laws, plaintiffs are only responsible for attorney's fees for a prevailing defendant in very limited circumstances. Caremark's clause changes that, and a party initiating an arbitration, including for the purpose as a delegation, would run into a much different and inferior process than you would have in court. The statute of limitations for plaintiffs under the antitrust laws is four years. Caremark cuts it in half. Clearly an inferior process to court. This is exactly the kind of case that Ronderos, Heckman, and Ferguson were talking about where there's multiple provisions. Now my friend says in their briefs that that's all based on California law, and Arizona law is completely different, and in Arizona law you can have a hundred unconscionable provisions and a court would rewrite them and strike them down individually and still enforce the rest of the clause. First of all, Arizona law doesn't depart from California law in that kind of way. It's just much less well-developed. There are a lot fewer cases in Arizona, but they repeatedly cite the California cases, and we've given several examples of that in our brief. Also, if you look at the key Arizona cases, they in turn cite the exact cases that this court was citing in Ronderos and so forth, because the Rizio case, which is the Arizona Supreme Court case in 2020 dealing with whether or not plaintiffs have to really prove the cost of arbitration, which my friend cites a great deal. The Gullett case, which they cite a great deal to argue that procedural unconscionably doesn't matter. Both of them cite the idea that an arbitration clause is only enforceable if parties can effectively vindicate their statutory substantive rights. In other words, arbitration moves you from court to another forum, but it's not like you've moved to a country that doesn't have the antitrust laws. You still are supposed to have the ability to effectively vindicate their rights. And both of them cite the U.S. Supreme Court's decision in Greentree v. Randolph in 2000, which is Chief Justice Rehnquist—the phrase effectively vindicate the rights has been in arbitration decisions from the Supreme Court interpreting the Federal Arbitration Act going back to the 70s. But in the Greentree case, Chief Justice Rehnquist said, you plaintiffs have to come up with evidence to prove it. But where they have shown the costs are going to be prohibitive, that they're that high, then parties would not be able to effectively vindicate their rights. This was a rule of federal arbitration law. There was no question. It wasn't—they weren't talking about Alabama law and the Truth in Lending Act. They weren't interested in state contract law. It was a basic rule of federal arbitration law. And what's happened is most states, as they've developed their own laws, have basically incorporated this effective vindication. Is it federal law? Is it state law? It's really—it really shows up in both. So the district court thought that with the excision of the clauses that it identified as unconscionable, that you would be able to effectively vindicate your rights in arbitration. I understand you disagree with that as to some of the provisions that didn't strike down, but I just—I'm not really sure I'm clear on what your view is of the propriety of severing unconscionable provisions. I mean, do you object to the basic premise that you can have some unconscionable provisions and sever them and then the rest of the agreement can be okay? You can have some, but what this court has said—and the drawing line seems to be three—that where there are multiple provisions that are designed to have that, then this court has said that you strike down the entire arbitration clause and that the reason for that is that you're trying to deter parties from trying to draft clauses and see how many things they can put in. If a party is looking to begin a case and there's a whole bunch of terms in there that are really extremely intimidating and sound dangerous to you, and you're not sure which ones will be struck down and which ones won't, it has a deterrent effect that prevents people from going forward. So, for example, in the Lim case, which was this court's most recent loser pays case, and my friend says, well, you haven't proven what our attorney's fees would be if you sue, you bring the entire case and you lose, how much we owe, you haven't proven to a certainty what our fees would be, that's not the way this court looked at it in Lim. This court said that if parties would face a risk that is significantly appreciably higher in arbitration than they would face in court because there's a loser pays rule, that that risk is what caused it to be unconscionable. And Lim was just a couple of years ago from this court and it made sense. So I think that the way the effective indication ties in with severability is in Ronderos and Heckman, which are both 2024 cases from this court in the fall, and then the Ferguson case goes all the way back to 2003. And by the way, the Ferguson case didn't talk about California law hardly at all. It was really setting out a rule of contract law and arbitration law. Counsel, as we think about the fee shifting provision, do we get to think about it in sort of a larger context of the arbitration? One of the reasons for arbitration is that it moves much faster, that you don't have the extensive discovery, that it tends to be a little bit more judge-driven rather than party-driven. And so one of the theories of arbitration is it's not only quicker, but that saves everybody a lot of money. So do we get to take that into account when we consider the potential cost to your client of going to arbitration and the possibility of the loser-pays provision? It's an intriguing idea. I have to say, I don't remember seeing that in the case law, Your Honor. So I think you've taken me a little bit off the hop because I feel like I've read a lot of the loser-pays cases, and we've brought a lot of them in, including Lim, but there have been some other cases from this court on loser-pays, and I have not seen that kind of idea. Even if the loser-pays is smaller, in our brief, we set out an enormous amount in our opening brief of detail about each of these four pharmacies, two of them forced into insolvency, two of them right on the brink of insolvency, all of them having assets that are significantly lower than their accounts payable and their debts, all of them having very small income. In a couple of years, two of the pharmacies had incomes around $300,000. They had some years where they were under $1,000. The idea that, well, Caremark's attorney's fees in arbitration will be so much smaller that they would not deter these small pharmacies from going forward, I suggest is counter to what the record shows you about what these pharmacies are able to afford. We put forward a great deal of evidence about income and assets for these pharmacies, and it would deter them. But if you were to go to antitrust, pursue a complicated antitrust trial in federal district court, they're going to run up substantial, both sides are going to run up substantial fees. There's all of the discovery and the depositions and so on. And then let's suppose that your clients did not get a favorable consequence, even though they're not on the hook for Caremark's attorney's fees. They're now on the hook for a whole lot more than they might have been of their own attorney's fees and costs associated with litigation than they might have been if they'd gone to arbitration. Do we get to take that into account? I understand the argument you're making. I will retreat to that. I've just not seen that in the case law. I think that what the Lim case said was that where there was a loser pays provision in an arbitration clause, that that would put the party, quote, at risk of incurring greater costs than they would bear if they were to litigate their claims in federal court. And so that was a case where the loser pays provision was in an arbitration clause, and this court found that that risk was substantial. And I do think that that's going to be the case here as well. Is it really going to add to the risk? You've already described the precarious position of the plaintiffs, two of whom are already out of business without any impact from this. I'm not sure that the loser pay provision is going to make a lot of difference if they proceed with this litigation and do not prevail. Is there any realistic chance they're going to continue the operation anyway? I do think that this would push the two that are still in business over the line, I think, if they were to end up being— I mean, it seems to me what we're really talking about here is the escrow clause, the requirement for the price of admission. And you've properly noted that that spoke very much to even the Supreme Court, which is mostly pro-arbitration, as our court has learned to dismay many times, effective vindication. Well, the escrow clause was a problem, but the district court knocked that out. And perhaps seeing the writing on the wall, defendant has decided we're not pursuing that anyway. That's off the table. And so what is it that is so burdensome as to make the arbitration clause unconscionable if that upfront payment is no longer at issue? So, first, we do argue very strenuously in our brief and in our reply at pages 19 to 20, there's a ton of cases where courts have said that in looking at unconscionability, you look at it from the beginning. So you look at— Oh, and the district court here did. I mean, evaluated as part of the overall analysis, but in terms of the practical impact, it doesn't appear to have any weight now toward an effective vindication. So why is it that we should balk at— Well, so there's still very substantial arbitration clauses without—costs without the escrow. There's three jams arbitrators, and we have two different experts, which they never disposed or challenged the experts, that said that the cost of arbitration per pharmacy location is $300,000 to $700,000 to go forward. But the cost of—I mean, as Judge Bybee pointed out, the cost of litigation is going to be at least that, or probably considerably more, right? So, I mean, in whatever forum you're in, litigating a major antitrust case is expensive. But that's not the fault of the arbitration clause. The biggest expense, Your Honor, is experts, and with all respect, you have to have the same experts in arbitration that you do in court. Our firm has handled some cases in arbitration, and we have very substantial expert reports, and that's the lion's share of the expense. So that's zero difference between litigation and arbitration? That is zero difference. The forum fees is where there's the difference, Your Honor. Well, but— I mean, the limitations period is half the same length. And by the way, the parties' relative bargaining power, the lead in Arizona case on statute of limitations is this Transamerica case which we cited, and they said, oh, that's an insurance contract. It's totally different because these are businesses. What the Arizona Supreme Court said was that something that shortens the statute of limitations is not going to be permitted. They didn't call it unconscionable. They just refused to enforce it where it would be a contract of adhesion and where it would be unjust to do it. So all of our evidence that these pharmacies were coerced into entering these contracts by Karamark in the first instance, which my friend says, oh, that's totally irrelevant. Arizona doesn't care about that. Transamerica case says that Arizona does care about that with respect to statute of limitations. And then we've cited a series of the Arizona cases that do look at the relative bargaining power between the parties. I'd like to try and hold on to two minutes for rebuttal, if I may, Your Honor. You may. Thank you. Mr. McCloud. Thank you, Your Honor. I may please the court. Charles McCloud of Williams and Connolly on behalf of Karamark. Year after year, Karamark and plaintiffs agreed to arbitrate any and all disputes between them under an arbitration provision that this court and courts across the country have consistently found enforceable. Plaintiffs are asking you to break with that consensus and let them litigate a sprawling class action in district court. The court should reject that request, and there are multiple grounds to do so. From Karamark's perspective, the most straightforward way to resolve this case is to focus on the issue of severance. As the district court concluded, to the extent there are unconscionable provisions within the arbitration agreement, those can be severed, and the arbitration agreement will function perfectly well. Before you get further into that, can you just clarify, you've taken a cross appeal here. Yes, Your Honor. And I'm just trying to understand exactly what's at issue in the cross appeal. So you won in the sense that after severing these provisions, the district court said that because it did not delegate to the arbitrator the question of arbitrability, it resolved the question of arbitrability, and it resolved that in your favor. And if we agree with you on the cross appeal, would we not wipe out that favorable judgment, and you would then go to an arbitrator who would have to decide arbitrability and might decide that against you, right? That's right. So that's why I think from our perspective, severance is actually the preferable way for you to resolve this. The reason we raised the cross appeal is because if you disagree with me about severance, I need to have the opportunity to try to convince you there's no unconscionability within the agreement and to rely on the delegation clause. But if the court agrees that severance is appropriate, and we think severance is appropriate both based on the case law and based on the text of this agreement, under Arizona law, the primary determinant of whether severance is appropriate or not is the text of the agreement. Here we have an express severability clause. Sure, you can split the questions that way, because your argument on the cross appeal, who gets to decide all of these questions? And it seems to me if you prevail on that, as Judge Miller has raised, we're not in a position to decide severability and the district court wasn't in a position to decide severability because the arbitrator had to do that. So I hear what you're saying, you'd like to eat your cake and have it too, but I don't think you can. Either you're going to pursue the cross appeal and have us rule on that, in which case you are at risk of winning a victory that causes you to lose the big victory, or you're not going to pursue that cross appeal. I hear your effort to, well, why don't you answer severability first, but we don't get to answer that question if you win your cross appeal. So what question do you want us to answer? So Judge Clifton, let me just take 30 seconds to try to convince you they're not inconsistent. I guess what I'm suggesting to you and to Judge Miller is the court can assume for purposes of our cross appeal that the district court was right on the delegation clause and simply resolve the issue of severance. If the court is not comfortable with that approach and thinks that I have to pick one or the other, then I would rest on severance. I think that that is exactly the correct approach. It's well supported by the contract. It's well supported by the law, both from the Arizona courts and from this court. My friend on the other side suggests that there's some sort of magic number of provisions that can be severed or not. I don't think the case law draws that sort of bright line. Instead, the courts look to the question of whether the arbitration agreement can function and operate with the severed provisions removed. And here, as the questioning earlier suggested, the arbitration provision is in some ways more efficient with the escrow provision removed because it allows the parties to go to arbitration more quickly and more efficiently. And so we don't see any barrier to arbitration. We don't see any problem with plaintiffs being able to vindicate their rights within the arbitration under the version of the arbitration provision that the district court adopted through its severance analysis. My friend talked about the costs associated with arbitration. As many of the questions pointed out, plaintiffs are on the hook for many of those same costs, if not more so, in district court. I'd also note that the Supreme Court's decision in Italian colors said very expressly that the mere fact it's expensive to litigate a claim in arbitration does not mean that you cannot effectively vindicate your right to the claim. When the court has talked about effective vindication in the arbitration context in the past, it has focused on provisions that effectively bar a party from litigating a claim. A claim provision that says you may not bring this claim in arbitration. That is not the case here. They will have the chance to litigate their arbitration claim within the arbitration. The costs of litigating that claim are unclear, in part because of the fee-shifting mechanism. If they happen to prevail on some claims, that could affect the calculus. I would also note that under Arizona law, if we were in district court, five of their seven claims are also subject to fee-shifting anyway. And so the ultimate effect, as the district court said, of the fee-shifting provision is at best speculative. And that speculative nature is, I think, reinforced by the sort of paltry showing that plaintiffs made on their costs in the district court. Of course, we talked about this in the context of our cross-appeal on the escrow clause. But I think it's equally true with respect to the fee-shifting provision. They have not put forward evidence, for example, that they can't look to the fee arrangement they have with their lawyers in order to fund some of this litigation. And the Supreme Court of Arizona in the Rizio case said that that sort of fee arrangement is relevant to the substantive unconscionability analysis. When you talk about fund this litigation, I want to hone in on just what you mean. Because I do have some concern. I think the Supreme Court has reflected some concern about the price of admission. That is, there's a big bill that lets you get into the process. And I think that's the objection that the district court legitimately identified with the escrow clause. And as I was looking at the answering brief, I mean, it says they're not going to be required to pay any arbitration fees unless they lose. But in the sort of sur-reply brief, and I'll note that under FRAP 28.1, I don't think that is an appropriate brief, but it did make reference to a suggestion, or I saw there a suggestion, that maybe there's going to be an upfront fee imposed upon plaintiffs just to get into arbitration, which could be a problem. So let me just pose to you now. What is your understanding as to what burden will be placed on the plaintiffs to start that arbitration process? My understanding is that with the escrow fee gone, there is not really any get-in-the-door fee anymore. That was my impression, but like I say, and I could find it, but I began to get concerned on that. So I want to be clear that we have a common understanding that there's not a price of admission just to get the arbitration ball rolling that the plaintiffs are going to be expected to bear. That is my understanding, Judge Clifton. I think it is true that at the end of the day, someone will have to pay, for example, the arbitrator's fees, but that doesn't have to be paid upfront is my understanding. I would like to briefly touch on the issue of procedural unconscionability. I think my friend on the other side suggested that we have taken the position that procedural unconscionability or inequity in bargaining power is irrelevant. That is not our position. We think that under Arizona law, courts can look to both procedural unconscionability and substantive unconscionability, and the district court did that here and found that this agreement was not procedurally unconscionable. It actually made that conclusion twice. I think the disagreement between the parties is can plaintiffs use their inadequate showing on procedural unconscionability to sort of bolster their arguments on substantive unconscionability, and we don't see support for that proposition within the Arizona case law. I think it is true that California takes a somewhat different approach where unconscionability has both procedural and substantive elements to it, and courts combine the two at the end of the day to determine whether there is overall unconscionability. Our understanding from the Maxwell case and other Arizona cases is that Arizona looks at that issue differently. They separate out the analysis of procedural and substantive unconscionability. Having said that, I think if you look at procedural unconscionability, the district court was exactly right in its analysis. A mere inequality in bargaining power is not by itself enough to be procedurally unconscionable. Arizona courts look to notions like unfair surprise. For example, do you hide the arbitration clause in fine print, or are there terms that are just wholly unexpected in the context of arbitration? As the district court explained, none of those concerns are present in this case. With respect to that issue as well, we think the district court should be affirmed. Counsel, would you turn to the unilateral modification provision? Yes, Your Honor. District court said that it did not think that the provision itself was unconscionable. That would be sort of on its face, but as applied, you would have to look at each of the changes. The one change that it looks like that Karamark did make in 2024 was to substitute Jams for AAA. Did Karamark offer any explanation for why it made that change? I'm not aware of the reason for that change. Did AAA require one or three arbitrators? I don't recall whether the defaulters one or three. Jams does contemplate three. Jams does contemplate three. As I understand, the plaintiff's concern is that Karamark has unilaterally imposed a far more expensive form of arbitration. Well, Your Honor, they never objected to that particular change in the briefing below. They had the chance to... I did see in their brief where they referred to Jams and they referred to the additional cost that Jams would impose. I'm referring to the district court. In the district court, they didn't make an argument that subbing in Jams for the AAA added to unconscionability. Having said that... I've got plaintiffs, nevertheless, put forth substantial evidence on the cost of arbitration through Jams. They put an affidavit by Kathleen Salisbury showing that it would be $500 to $800 per arbitrator. Case for minimum at $310,000. This is plaintiff's supplemental brief in opposition to arbitration. Yes, they put forward evidence of what they thought the cost of arbitrating through Jams would be. They did not, to my understanding, make the argument in the district court that the change from AAA to Jams was itself a problematic change under the modification provision. However, I think the modification provision, as the district court said, is really not a modification provision at all. It is a provision that allows Caremark to offer a new contract to plaintiffs, and it is up to them whether they want to accept that new contract at all. In this respect, it's very different from the provisions in cases like Heckman that this court struck down, where there was no ability of the plaintiff to opt out of the modified contract. In fact, in Heckman, the contract could be modified retroactively simply by clicking on the website. This is a very different scenario. They get notice of changes to the provider manual, and they are given a period of time to decide whether they want to continue submitting claims to Caremark or not. And any modification would apply only to claims arising after the date of the modification? That's right. Unless there are further questions, we ask that the court confirm. Thank you. Rebuttal? Thank you, Your Honor. With respect to the costs of arbitration, our experts have shown that the costs would be between $300,000 to $700,000. You don't have to pay them up front before the arbitration begins, but as it goes, you start getting rolling bills from jams. So it's not that you just don't pay any costs, and then you see whether you want or not. You're sending in costs of tens of thousands of dollars on a monthly basis to jams. We absolutely objected to the change from AAA to jams, and also from 1 to 3 arbitrators. And that's the reason that the costs of this have become so high, $300,000 to $700,000 per arbitration. But did you have an opportunity, did your clients have an opportunity to review that provision and decide to opt out? They did receive that, and they could have opted out. And this is where I think that the evidence on procedural incontrovertibility is so strong. Our expert, trasking through an enormous amount of data and economic theory and lengthy declarations, said that these pharmacies were coerced to signing this. Caremark controls 30% of all Medicare D patients. These pharmacies cannot survive if 30% of all drugs can't be sold by them. Caremark has these parties completely over a barrel. So when my friend says, oh, procedural incontrovertibility doesn't matter, the fact that it's coercive and that there's evidence that it's coercive is the strongest showing of procedural incontrovertibility this court has seen since the Ting case in 2001. The idea that that's irrelevant is completely at odds with both Arizona law, but also with the law on unilateral modification. If we thought for any reason that the unilateral modification provision, and or the, as applied, that would be the change from AAA to JAMS, was unconscionable, can it be severed? So we would argue that, so we still disagree with our friends on severance, but you certainly could sever that. With respect to going from AAA... What would it mean? Would it mean that you would revert to AAA? You know, Your Honor, I made a mistake. I apologize. I got my mouth out, ran my brain there for a second. For you to change it from three JAMS arbitrators to one AAA arbitrator isn't crossing a line through it. It's crafting a completely different contract than the one that's currently between the parties. And so we've argued that that can't be severed. That the decision as to whether you have, as to how the arbitration will be run, is something that is uniquely not severable. I'm sorry, my time has run up. I have a million other things I want to say, but thank you so much for your time, Your Honor. Thank you. Thank you very much, counsel. We thank both counsel for their helpful arguments, and the case is submitted.
judges: CLIFTON, BYBEE, MILLER